## BAYLOR *versus* SCOTT.

When a sheriff sells property upon an execution, which is encumbered by a deed of trust, on which a sum of money is to fall due some months after the sale, the sheriff cannot legally adjust the trust debt, of his own authority, by paying the money to become due upon it, out of the proceeds of the sale.

The plaintiff in execution—not the sheriff—is entitled to the benefit of a trust deed on paying off the debt secured by it; and the trustee will be bound to execute the trust.

Where a sheriff, in his return, offers an excuse for not paying over the whole of the money, which is insufficient, the Court would be bound to disregard such excuse, in a proceeding against the sheriff.

In a proceeding against a sheriff, his own return is not conclusive in his favor, either as to the law or the facts involved.

The act of 1807, giving a defendant in execution a summary remedy against a sheriff for failing to pay over an excess collected by him on such execution, provides that such defendant shall have the same remedy that plaintiffs in execution are entitled to against a sheriff, for failing to pay over money collected; but that act must not be so construed as to extend to defendants in execution the remedies provided for plaintiffs in execution, by subsequent statutes, whereby the limitation as to the time of commencing the proceeding is omitted, the time of notice abridged, and the penalty increased.

The act of 1807 is to be construed with reference to laws then in existence.

Baylor, who had been a defendant in execution, instituted a proceeding, by motion, in the Circuit Court of Jefferson, against Scott, the former sheriff of that county, for failing to pay over a sum of money, which he alleged, the said sheriff had received on the execution, beyond what was sufficient to satisfy it. The judgment against Baylor was for $749 22 cents, besides $51 26 cents costs. In virtue of an execution issued thereon, Scott, the sheriff, sold property to the value of $1047 87 1-2. In reference to two slaves, part of the property sold, the sheriff's return shewed that they were sold subject to a deed of trust in favor of one Steel, for $398 39 1-4; that the whole of the property sold amounted to $1047 81 1-4;

leaving, after deducting the claim under the deed of trust, $649 39 1-4 to be applied on this execution.

The plaintiff in the motion objected to the authority of the sheriff to adjust any demands but that of the execution. In urging this objection, he offered the deed of trust in evidence, to shew the true amount due on it, and the time when it became due. He also offered to prove that he did not owe Steel part of the amount set forth in the return, and that the plaintiff in execution had not purchased the trust debt: all which evidence the Court rejected; and decided that the sheriff's return was conclusive as to the matters set forth in it; and that the return not shewing a surplus or excess, the motion could not be sustained.

The notice given to Scott of the motion to be made against him, purported to have been given during the same term at which (on the fourth day thereof) it was to have been made.

The parties appeared, and the motion was continued. About two years had expired from the time the execution was issued, until the time when the motion was brought.

The questions presented for the decision of this Court, involved the legality of the instructions given and refused by the Court below; and that of the judgment in overruling the motion.

CRABB, for Plaintiff, insisted—that as it appeared from the return that there was an overplus, the sheriff in such case, could not save himself from a judgment against him, by shewing how he had disposed of the money, otherwise than by paying it over.

That the sheriff's return is conclusive in his own favor, (said he) is an extraordinary doctrine; and

one that will certainly not be sanctioned by this Court. What right had the sheriff to pay away the money to satisfy our debt? We had not made him our agent for that purpose. But the return in fact shews, that the property was sold subject to the lien of Steel. If this is to be taken according to the plain import of the language, the property was sold in its encumbered situation, and was still liable for Steel's debt; yet the sheriff took it upon himself to pay it out of the money he had received from the sale, lessened as that amount had been by the lien! He might as well state in his return, that he had disposed of the surplus for charitable purposes, or that he had scattered it to the four winds of Heaven. Deeds of trust are often matters of grave investigation before courts of justice : had the sheriff a right to assume the character of a judicial officer, and to determine on the validity of this deed of trust ? Had he a right, also to pay it before it was due, out of the debtor's money, without his consent ? There is a law authorising the plaintiff in execution to pay off a lien previous to sale ; but he cannot still take the property out of the hands of the trustee : he can only thereby put himself in the place of the *cestui que trust.* The sheriff can find no justification for his proceeding under this act—*Aikin's Digest*, 208. But, under the charge of the Court, it seems to have been of no consequence what disposition the sheriff had made of the money not paid over, provided he set it forth in his return. If he had thrown the money away, and had so returned it, it would have been equally available with the payment of Steel's debt.

The record of a former motion of Baylor against Scott, was introduced in evidence. In that case Baylor moved the Court to have the judgment entered sa-

tisfied. Baylor was unsuccessful; but the motion went off on a matter of abatement. The point in controversy there, could therefore be no defence on the ground of former trial.

1 *Starkie* 191, 198, 195, 199, 201—10 *Viner's Abr.* 446—3 *Wilson*, 240—*Norris's Peake*, 64.

PECK, *contra*, urged, that if on considering the entire case, this Court should be of opinion that the Court below came to a right conclusion, although some points may have been decided wrong; they will nevertheless affirm the judgment. Taking the sheriff's return altogether, and permitting it to explain itself, it will be apparent that the property was not sold *subject* to the lien, although that word is used. It is plain from the connexion that the meaning was, that the property was sold for a certain amount, subject to a deduction (from the amount) of the debt to Steel, secured by deed of trust. The amount for which the property was sold also illustrates the meaning. It was sufficiently large to free the property from incumbrance.

But the plaintiff mistook his remedy. By the act of 1807, the defendant in execution is allowed the same remedy against the sheriff that was allowed to the plaintiff in execution. This same act gave the summary remedy in favor of the plaintiff in execution. This act, which is the only one on which the defendant in execution can rely, required the party making the motion, to give the sheriff ten days previous notice of the same; and the motion must be made at the next succeeding term of the Court, when, if judgment was rendered against the sheriff, it was for the amount in his hands, and fifteen per cent. per annum, until paid. The plaintiff in the motion has

BAYLOR vs. SCOTT.

not come up to the requirements of this law, either in the time of notice given, or in the time of commencing the proceeding; yet this is the only law that gives a summary remedy to the defendant in execution. This law, making the remedy the same as that in favor of the plaintiff in execution, could not be construed to refer to future laws that might be passed in favor of such plaintiff. Yet the plaintiff in this motion seems to have intended to proceed under a subsequent act in favor of the plaintiff in execution, which increases the penalty against the sheriff. Surely, the Legislature in providing a remedy against a sheriff for neglect of duty, and in affixing a penalty, did not look into futurity, and designedly make that remedy and that penalty depend on a contingency. In penal laws there should be all possible certainty. The reason of the case may illustrate the meaning of the Legislature. It would surely be wrong that the defendant in execution should have it in his power to postpone the remedy for three, four, or five years, and then make his motion and recover the amount with five per cent. per month, in the way of damages. But by the act of 1807, if the summary remedy was resorted to at all, it must be at the next Court. In this case, the party delayed proceeding nearly three years: he thereby lost his right to proceed in this summary way.

By Mr. Chief Justice SAFFOLD:

This was a proceeding instituted by motion in the Circuit Court, by the plaintiff in error, against the defendant, as late sheriff of Jefferson county, for failing to pay over to said plaintiff in error, who was defendant in an execution, a certain sum of money, which it was alleged said sheriff had levied and collected out

of the plaintiff's property, it being an excess over the amount necessary to satisfy the whole judgment, with interest and cost; and which, on demand, had been refused.

The facts, as disclosed by the record, are the following. At October term, 1830, of the Jefferson Circuit Court, a judgment was rendered in favor of McGregor & Darling against Baylor, the plaintiff in error, for $749 22, besides $51 26 cents costs of suit, upon which a *fi. fa.* was issued to Scott, as sheriff : by virtue of this execution, he levied upon and sold property of the plaintiff to the value of $1047 87 1-2. Part of the property thus sold, consisted of a negro boy about ten, and a girl about twelve years of age, the proceeds of which amounted to $650.

In reference to these two slaves, the sheriff returned upon the execution, that they were sold to the plaintiffs in execution, by their agent—(subject to a deed of trust to Thomas M. Adkins trustee, to secure a debt to Maj. J. Steel, for $356 69, due four or five months thereafter, with interest for twelve months, and the costs of said deed, and twelve dollars for the hire of the boy for three months, he having been hired by the defendant in execution, before the levy, for that time, and the wages paid to him, making the whole lien of Steel $398 39 1-4.) The return also stated the proceeds of other property levied upon and sold at the same time, making with the sum mentioned $1047 81 1-4 cents, and leaving, (as the return reads,) after deducting the claim under the deed of trust, &c. $649 39 1-4 to be applied on this execution.

It is also shewn, that on the trial of the motion, the plaintiff in error, in urging his objection to the authority of the sheriff to adjust the demands mention-

ed, other than the amount of the execution, and to the manner of his doing so, offered in evidence said deed of trust, to shew the true amount due upon it, and the time payable ; also offered to prove that the plaintiffs in execution had not purchased the trust debt, and that he did not owe Steel the twelve dollars, allowed as hire for the boy ; all which evidence the Court rejected.   He then moved the Court to disallow these last mentioned payments ; but the Court overruled the motion, and decided, that the sheriff's return was conclusive as to the matters set forth in it, and that the return not shewing a surplus or excess, the motion could not be sustained.

From the bill of exceptions it further appears, that in bar or opposition to the motion, the defendant introduced as evidence, a record, shewing, that a previous motion had been made in the case of *McGregor & Darling* vs. *Baylor*, at the instance of the defendant, against said sheriff, to compel him to enter a credit on the execution to the full amount for which all the property levied upon, had been sold, and that the motion had been overruled.

Upon consideration of the case now before us, this motion was also overruled.

The present plaintiff assigns for error various causes ; embracing—

1. The rejection of his evidence, shewing the circumstances under which the sheriff had allowed, and paid, other demands than the execution.

2. The decision, that the sheriff's return was conclusive evidence as respects the matters therein contained, so that no excess in his hands could appear.

3. The judgment overruling the motion.

According to the views we entertain of the law governing motions of this kind, a brief investigation

of the subject will suffice; especially of the two first points presented for consideration.

If it were conceded that the sheriff had authority to adjust the trust demand, and extinguish the supposed lien under the deed, it would follow as a necessary consequence that his conduct would be subject to legal scrutiny for any alleged abuse of that power. If while liable to the summary redress for failing to pay over money made on an execution, or to restore an excess, he shews by his return a different application of the money, the Court would be competent to investigate the circumstances, so far at least as disclosed by the return and other parts of the record, and if it appear to have been misapplied; to hold him responsible, as in case of payment in his own wrong: or should it appear that a sheriff has assumed a judicial power, or private agency, with which he was not clothed; and by his official return he offers the exercise of this, as an excuse for not accounting for money which he otherwise should, the Court would be bound to disregard the excuse, and decide the case as if unconnected with it. The cause stated in this return, of there being no excess, is, that the sheriff gave a priority to a trust debt, &c. having sold the property subject to that lien. Was he authorised to do so? It is provided by statute,[a] that a plaintiff in execution may have the benefit of a deed of trust, on paying off the debts secured by it; and on such payment shall be placed in the situation previously occupied by the person for whose benefit the trust was executed, and the trustee shall execute the trust for him in the same manner. Thus it appears, that if these plaintiffs in execution had paid off the trust debt, the trustee alone, pursuant to the directions of the deed, not the sheriff, by virtue of an execution,

a Aik. Dig. 208, sec. 6.

was authorised to adjust the demand. But in this case it does not even appear that the trust debt had been extinguished, or in any manner transferred; the contrary presumption exists. The remark is also due, that the language of the return, so far as it speaks of the slaves having been *sold subject to the deed of trust*, seems to import a sale of the property under the incumbrance, with notice that the lien was to continue, and be subsequently enforced against the property. Other parts of the return explain that the contrary course was pursued, but as we think, without the authority of law. That a sheriff's return is not conclusive in his favor, in a direct proceeding against him, in relation to either the law or facts involved, is equally clear.

The foregoing reflections have been made, not for the purpose of shewing any wilful dereliction on the part of the sheriff, or even that injustice has been done, but to shew, that the authority of the sheriff has been mistaken and transcended; and that if from other considerations we should not feel authorised to reverse this judgment, the principles of the decision below have not our sanction.

It is only necessary farther to enquire, if the plaintiff in error was entitled to redress at the time and in the manner sought by his motion? The right is not contended for, otherwise, than on the authority of the statute. The only statute relating to the right of a defendant in execution to obtain restitution of any excess of monies collected against him, is the act of 1807. This act provides, in such case, that if the [a]Aik. Dig.162. sec. 13. sheriff fail or refuse to pay such excess or surplus, when required, he "shall be liable to the like penalty and judgment in favor of the debtor, as is prescribed and directed by law, in favor of the plaintiff against

the sheriff, for not paying the principal, interest, and costs, levied on an execution." Another section of the same act, (the law above referred to[a]) in prescribing the mode of redress to the plaintiff in execution, against a sheriff who has actually made the money on execution, or rendered himself responsible for it, as in case of a voluntary escape, provides, that it shall be lawful for the creditor or plaintiff in execution, upon a motion, made *at the next succeeding Court* from which such writ shall issue, and on ten days notice given, to demand judgment against such officer for the money mentioned in such writ, or so much as shall be returned levied thereon, with interest at the rate of *fifteen per centum per annum* thereon, from the return day of the execution, until the judgment shall be discharged, and such Court shall award judgment and execution accordingly. It may be observed, that in this proceeding the plaintiff in error has failed to pursue the course prescribed, in two respects. Instead of the ten days notice as required by the statute, the notice purports to have been given during the same term at which, on the fourth day thereof, the motion was to have been made: in fact, the motion was entered on the rule docket, bearing equal date with the notice. But as the parties are shewn to have appeared to the motion at the first term, and it does not appear that the sheriff objected to the notice, but that the cause was continued until the next term, let it be conceded that this defect, if otherwise available, has been waived. Then how stands the other objection, that the motion was not made at the *next succeeding Court* from whence the writ issued, but two years or more thereafter.

The act of 1819,[b] prescribes no form of remedy, being only declaratory of the sheriff's duty, and of

[a] Aik. Dig. 173, sec. 74.

[b] Toul. D. 316, sec. 16.

the amount of penalty incurred by his failure to pay
the same over to the party entitled: it therefore can
afford no aid in the determination of this question.

The act of 1826,[a] is the only remaining one which [a]Aik. Dig.174,
can be supposed applicable to this case. It provides, sec. 76.
in substance, that whenever any sheriff shall fail or
refuse to pay over any money collected by him upon
any execution, on the application of the *plaintiff*, it
shall be lawful for the Court, upon one day's notice
being given to said sheriff, and on motion of the plain-
tiff in execution to render judgment against the offi-
cer thus failing, and his security, or any or either of
them, for the amount of money thus received, to-
gether with five *per centum* upon the amount of the
execution, as damages for each and every month de-
tained.

Now, the enquiry arises, does the act recited, of
1807, providing for the restoration to the defendant
in execution, of any excess of money collected, enti-
tle him to the same remedy prescribed to plaintiffs
in execution by the statute of 1826, last referred to?
The penalty is materially different, having been rais-
ed from *fifteen per cent. per ann.* as by the former, to
*five per cent. per month* as authorised by the latter act:
also the notice has been reduced from ten days to
one. It is in the nature of a penal statute, requiring
a strict construction. If it can be applied for the
benefit of defendants, as nothing of the kind is there-
in expressed, it must be by implication, and on the
principle alone, that the Legislature has substituted
the latter act for that section of the act of 1807, to
which, defendants, by a different section of the same
act, were referred for their remedy, in case of any
surplus or excess withheld from them, both which
provisions have already been quoted. If by fair

construction, the early act provided for defendants in reference to excess,. not only the cotemporary remedy allowed to plaintiffs in execution, but also any modifications of it that might exist when subsequently resorted to, the changes in the statute would inure equally for the benefit of defendants : but is such construction warranted ? The language of the early statute as already quoted, is, that the sheriff " shall be liable to the like penalty and judgment in favor of the debtor, as *is* prescribed and directed by law in favor of the plaintiff,"—not, as *is*, or *may be* prescribed.

It is necessary to notice another difference between the remedy, as prescribed by the early and late statutes referred to, or at least, in the express provisions of the two : it is that to which I have previously adverted, that the act of 1807 authorises the summary proceeding only " upon a motion made at the next succeeding Court" from which such writ issued ; when that of 1826 contains no express limitation of the time for making the motion. It may be a question whether the several statutes on this subject, should not be regarded as acts in *pari materia,* so as to extend the requisition to them all, even in respect to plaintiffs, that the motion shall be made at the next succeeding term of the Court from which the execution issued. This, however, is not a question now presented for consideration, and no opinion is intended to be intimated upon it. But with reference to the debtor or defendant in execution, the act of 1807, containing his only authority for restitution to an excess, in the summary mode, he must adopt that remedy, if at all, within the time prescribed. We can not, on the principle of the statutes being in *pari materia,* disregard the time, and apply the provisions of the

subsequent act to the case of debtors ; reasons to the contrary are, that the relief to debtors or defendants in execution, is not mentioned in the latter, the remedy is more rigorous, and is of a penal character, and the limitation of time is not expressly waived by it.

It can not be maintained that the defendant in error has waived this objection. True it is, that he appeared and made defence to the motion in the Circuit Court, and it is not shewn that he claimed this exception ; but he being successful below, was under no necessity of spreading the exceptions he may have taken to the decisions of the Court, upon the record, and nothing appearing of record can have the effect to negative the idea that he may have urged this objection to the Court, and been overruled ; if he did, the plaintiff's bill of exceptions would not necessarily shew it. Besides, the limitation in this respect, stands on a principle different from the ordinary limitation of actions ; in respect to the latter, a subsequent promise to pay, would constitute a waiver of the defence, and by the rules of practice defendants are required to plead it, so that their failure to do so, implies a waiver. Here, the question relates not to the right involved, but to the summary jurisdiction of the Court, and we think the failure to plead this matter does not constitute an estoppel. Advantage of it is now claimed in argument, and this ground alone was sufficient to have justified the decision of the Circuit Court, overruling the motion ; that different reasons were there given for the decision does not vitiate the result. If the judgment should be reversed, and the cause remanded, there is nothing to prevent the defendant in error from availing himself of this objection to the remedy on a future trial.

We are therefore unanimous in the opinion that the judgment must be affirmed.